IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

JAMIE A. BEALE,

    Plaintiff,

v.

WELLTOWER, INC.

    Defendant.
_____/

## COMPLAINT

Plaintiff, JAMIE A. BEALE, by and through her undersigned counsel hereby files this lawsuit against Defendant, WELLTOWER INC., and as grounds therefore alleges as follows:

## JURISDICTION, PARTIES AND VENUE

1. Plaintiff brings claims for discrimination on the basis of her gender in violation of the Equal Pay Act of 1963, 29 U.S.C. 206.

2. This court has original jurisdiction over this matter insofar as the matter involves a federal question, namely violation of 29 U.S.C. §216(b).

3. Plaintiff, JAMIE A. BEALE, is a resident of Palm Beach County, Florida.

4. Defendant, WELLTOWER, INC. ("Welltower") has a principal address located at 4500 Dorr Street Toledo, OH 43615.

5. This cause of action arose in Palm Beach County.

6. Palm Beach County, Florida is proper venue for this action because Plaintiff resides in Palm Beach County and at all times material hereto, Plaintiff was employed by and had dealings with Defendant in Palm Beach County, Florida.

## COMMON ALLEGATIONS

7. Plaintiff is an African American female.

8. She began her employment with Defendant in October, 2013.

9. Plaintiff holds an MBA in Management.

10. Defendant hired Plaintiff BEALE for the role of Regional Director of Property Management for the company's Florida portfolio at a salary of $113,129. In 2016, Plaintiff's salary was $122,000.00.

11. In April, 2016, Defendant promoted BEALE to Vice President of EPM & Sustainability. As part of that promotion, BEALE received an increased salary of $145,000.00. In this role, Plaintiff was the first women and first African-American in a Vice President for the company.

12. In 2021, Plaintiff continues to be the only African-American in senior management. Both women and African-Americans are grossly underpromoted and are underrepresented in Vice President positions at the company.

13. In fact, the company has an entirely subjective promotion process. Most commonly for Vice President and other higher level managerial positions, the company simply selects individuals for roles without first posting positions or allowing employees to apply. This tap on the shoulder system has created a non-diverse management team at the company and has created a culture that favors men.

14. In many ways Plaintiff has been the company's token person for diversity. While she is well qualified for the positions the company selected for her to hold, she has learned that she was grossly underpaid in those roles as compared to her white, male counterparts.

15. In April, 2016 when Plaintiff BEALE was placed in the Vice President role, she was told

that she would be replacing two white males. One was reassigned and the other separated. Although she was not aware of it at the time, both of the white men she replaced were paid salaries in excess of $200,000.00 each. Although she was assigned both of their duties, her salary was $55,000 per year less than their individual salaries. Essentially, she was doing the work of two males for significantly less pay.

16. In 2017, the company retained two third party business consultants, McKinsey was retained to set the corporate strategy and AON Hewitt was retained to conduct a pay analysis for the entire Welltower platform.

17. The so-called McKinsey consultation revealed several pay disparities across both gender and racial basis.

18. In the Fourth Quarter of 2017, the McKinsey Report was inadvertently emailed to the Plaintiff along with a presentation. When Plaintiff received the report, she learned that she was the lowest paid Vice President in the Outpatient Medical vision of the company. The information was devasting particularly because Plaintiff had been in Vice President role longer than most of the other Vice Presidents and her manager had awarded her the highest marks on her evaluations each year. The company was engaged in a practice of paying white males at much higher salaries then black females. This disparity was apparent both at the time of hire and even for those men hired after Plaintiff was in a Vice President role.

19. After receiving the email, she discussed the pay disparity with her manager Mike Noto. Mr. Noto responded by stating, "I completely understand Kido." He agreed to address the disparity.

20. Mr. Noto promised that the company would provide Plaintiff with a "market adjustment" for the upcoming 2018 compensation year as well as additional adjustments until her pay

was equal to her peers.

21. In January, 2018, Plaintiff received a salary increase from $149,143 to $170,000. Mr. Noto stated that the increase represented a partial remediation for the underpayment. There was no discussion of remedying the past pay inequities.

22. Unfortunately, that was the first, and only remedial compensation adjustment Plaintiff has received. Plaintiff remained grossly underpaid as compared to other vice presidents, most of which were white men.

23. In 2019, the Defendant continued to add duties and responsibilities to Plaintiff's role. She was offered and accept the Transitions Role which required her to make important positions in transactions including:

- CNL
- Crystal
- Flagship
- IRA
- Hammes

24. Plaintiff continued to work productively and in fact has successfully completed several projects and initiatives including:

- **African American Employee Networking Group (AF-AM ENG)** - Leading the creation and rollout of the first-ever AF-AM ENG.
- **CORE** – She was an active member of CORE's leadership group since its inception in 2014 through 2018 and served as the Chair of Programming in 2018.
- **United Way** – She was selected to serve as Vice Chair and Chair of our United Way campaigns in 2017 and 2018, respectively.
- **Cornell Women's Leadership Summit** – She was asked by senior leadership to participate on this panel held in the company's Toledo office.
- **Toledo Campus Build-out** – Plaintiff held a senior role in the build-out of the Toledo Campus.
- **Diversity recruiting.**

25. Plaintiff received exceeds expectations performance reviews from 2013-2020.

26. During her employment, Plaintiff has also received several accolades including:

1. Being nominated in 2017 to attend the South Beach "Top Performers" weekend,
2. Selected in 2019 to participate in the Executive Coaching program; and
3. Selected in 2020 to serve a one-year term on Welltower's newly created Executive Leadership team which included only top-level "A" performers at the SVP position. Only a handful of VPs were selected to join this committee and BEALE was one of the VPs selected by the CEO and Board.

27. Since her hire, the company (for the 2018 compensation year and forward) has adopted a new compensation structure to align employees' salaries with their performance levels. Under this structure an employee's manager rates performance with AON letter grade. An employee is eligible for an increase based on the grade they score. For example, if a manager rates an employee as an A performer then they will receive higher compensation within their pay band. Under the Defendant's pay-matrix model, Plaintiff's current salary is at the lower end of the matrix as comparted to other white men. While her performance scores are As and should place her at the upper end of band, she has not received an increase commiserate with her performance.

28. The Defendant's discriminatory practices exist both in setting her initial salary, her promotional salary, and her salary under the company's pay band structure. Plaintiff's pay disparities are further compounded by the fact she been underpaid from the date of her hire.

29. Plaintiff is currently working in Pay Grade 9 with a max salary of $270,582. As of January 1, 2021, Plaintiff's current salary is $190,739. She has received reviews that place her rating as an A during the 2018 - 2020 years.

30. The previous manager who promised in 2017 to make increases to Plaintiff's salary in order to redress the underpayment and inequity of her pay is no longer an employee. Plaintiff's new manager is Keith Konkoli.

31. In 2020, the company asked Plaintiff to take on the responsibilities and role of Relationship Management, in addition to keeping her existing roles leading the Project Management and

Transitions teams. She currently holds these roles.

32. In January 2020, Mr. Konkoli had given her a stellar performance review for the 2019 performance year and a 3.9% increase in her salary to $187,000.00. Even with the increase, her salary falls at the middle of her Grade 9 salary band.

33. Plaintiff discussed the disparity in pay issue with Mr. Konkoli in February, 2020. He in turn promised to speak with leadership and revisit her compensation in June (prior to her leaving for maternity leave) when mid-year adjustments can be made. No adjustment has been made.

34. Plaintiff was invited to the 2020 Board of Directors retreat by the company's CEO, as part of her new role with the company's Executive Management team.

35. In Spring, 2020, the company was laying off employees due to COVID-19. Given the layoffs, Plaintiff did not intend to immediately resume the dialogue about the pay inequities; however, then the George Floyd incident occurred. The incident and the company's lack of sensitivities towards minority employees caused the company to ask Plaintiff to lead training and all like meetings. Plaintiff, as the only African American member of management, had been asked earlier in 2020 to lead the African American employee networking group.

36. In November 2020, Plaintiff was participating on a company-wide townhall sponsored by Welltower's women's group called CORE, which the Plaintiff previously chaired in 2018. During the recorded townhall, the CEO joined the group for a dialogue on equity. During the call, the CEO encouraged the women on the call to feel confident in advocating for their salaries.

37. At the CORE women's group townhall, Plaintiff asked a question about how women could

better advocate for increases to their salaries.

38. The very next day after the CORE women's group townhall on November 20, 2020, Plaintiff received a call from Human Capital that she was being removed from the Company's website.

39. In December 2020, the Defendant was discussing its compensation plan for 2021. The company was communicating that 2021 employee pay and increases were going to be tight. Notwithstanding that directive the company promoted 51 employees in November, 2020.

40. Heeding the advice of the CEO, Plaintiff resumed the conversation with Mr. Konkoli about her own salary increase. She had been patient, but felt the time was right to raise the issue. He told her to "lay out her case" in writing. She sent a detailed email outlining her pay history, salary, her contributions, and performance. She also explained that her pay was at the lower end of the pay band and significantly less than others who hold similar positions.

41. One month after sending her business case, Plaintiff received an email rebuttal that provided no valid reasons why her case was rejected.

42. To date, her pay has not been adjusted.

43. On January 28, 2021, just a few weeks after she complained about her pay again, Plaintiff received an evaluation from Mr. Konkoli. This was the lowest review she had received in 4 years. Based on the comments, she no longer scored an "A" but rather a "B."

44. Plaintiff contends that her lower evaluation and removal from the company's website was in retaliation for her requests for a salary increase and for outlining the disparity in pay.

45. Plaintiff has not received an upward adjustment and remains paid less than other white, male vice presidents. Many of her comparators have less education and experience.

46. The Company's CEO has made derogatory comments about gender including stating that

he would never pay a female the same as a male with a family.

47. While the company continues to add on to Plaintiff's responsibilities and made her the "face" of diversity by having her chair women's group and racial organizations within the company, the company continues to deny her equal pay.

48. For the time Plaintiff has worked for Defendant, she has was doing more work for less pay than other white males.

## COUNT I
## EQUAL PAY ACT VIOLATION

Plaintiff, realleges and references each and every allegation contained in the preceding paragraphs 1 through 48 and incorporates same as set for fully herein.

48. Defendant, through its agents or supervisors, underpaid the Plaintiff, a female.

49. Plaintiff, a female, had similar job descriptions, requiring equal skill, effort, and responsibilities as other similarly-situated men.

50. Defendant's failure to pay Plaintiff wages comparable with similarly-situated men constitutes a violation of the Equal Pay Act of 1963, 29 U.S.C. 206(d)(1 ).

51. At all times relevant hereto, Defendant had actual or constructive knowledge of the conduct described in this Count.

52. As a result of the Defendant's discriminatory conduct, Plaintiff was paid less than similarly-situated men employees.

53. As a result of Defendant's conduct, Plaintiff sustained wage loss.

54. Defendant violated the Equal Pay act of 1963, 29 U.S.C. 206(d)(1) by refusing to adequately compensate the Plaintiff on the basis of her sex.

55. Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to ensure equal pay.

56. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant has engaged in other discriminatory practices against her which are not yet fully known. At such time as said discrimination becomes known to her, Plaintiff will seek leave of Court to amend this Complaint in that regard.

57. The Plaintiff has exhausted her administrative remedies.

58. As a direct and proximate result of Defendant's violative actions, Plaintiff is entitled to back wages, liquidated damages, and other relief the court deems just and proper.

59. As a further and direct proximate result of the Defendant's violation, as heretofore described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with the Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore will seek leave of Court to amend this Complaint in that regard when the same shall be fully and finally ascertained.

60. Plaintiff requests that her attorneys' fees be awarded pursuant to the Equal Pay Act of 1963, 29 U.S.C. 206.

WHEREFORE, Plaintiff prays that judgment be entered in her favor against the Defendant, as follows: That Plaintiff be awarded general and compensatory damages, including prejudgment interest, in an amount according to proof at trial; that Plaintiff be awarded punitive damages in an amount according to proof at trial; that Plaintiff be awarded reasonable attorneys' fees and costs of suit; and that Plaintiff be awarded such other and further relief as the Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT II
## RETALIATION
## IN VIOLATION OF THE EPA ACT 29 U.S.C. §215

Plaintiff, realleges and references each and every allegation contained in the preceding paragraphs 1 through 48 and incorporates same as set for fully herein.

61. Plaintiff was aware the Defendant was compensating similarly-situated males more than Plaintiff.

62. Plaintiff had a good faith belief that her rights under the FLSA were being violated.

63. Plaintiff complained in good-faith to the Defendant.

64. Plaintiff's objections and requests for equal pay constitutes protected activity as that term is defined by the FLSA.

65. Plaintiff's ongoing disparate pay, being removed from the website and her recent lower evaluation constitute a material change in the terms and conditions of her employment and therefore constitute an adverse employment action.

66. After engaging in protected activity, Plaintiff suffered adverse actions, including Defendant's failure to redress discriminatory pay practices and suffering a lower evaluation, changing her from a A to a B performer thereby reducing her ability to receive a higher salary increase.

67. A connection exists between the Plaintiff's protected activity and the adverse actions taken by the Defendant.

68. Defendant's adverse actions are in retaliation for Plaintiff's protected activity.

69. Defendant's retaliatory actions were in violation of the Fair Labor Standards Act, pursuant to 29 U.S.C. Section 215.

70. Defendant's retaliatory actions were the result of intentional, willful misconduct, such that

Plaintiff is entitled to liquidated damages.

71. As a direct and proximate result of the Defendant's actions, Plaintiff has obtained counsel to represent her in this action and has agreed to incur reasonable attorney's fees and costs for the prosecution of this matter.

72. As a result, Plaintiff is entitled to reimbursement and/or an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. section 216.

73. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered damages.

74. As a result of Defendant's conduct, Plaintiff is entitled to damages including liquidated damages, attorney's fees and costs, and other penalties allowable by law.

WHEREFORE, Plaintiff prays that judgment be entered in her favor and against the Defendant as follows: that Plaintiff be awarded general and compensatory damages, liquidated damages, prejudgment interest; that Plaintiff be awarded reasonable attorneys' fees and costs of suit pursuant to 29 U.S.C.A. §216; and that Plaintiff be awarded such other and further relief as the Court deems just and proper.

## COUNT III – DISCRIMINATION IN VIOLATION OF 42 U.S.C 1981,1981(A)

Plaintiff, realleges and references each and every allegation contained in the preceding paragraphs 1 through 48 and incorporates same as set for fully herein.

75. Defendant engaged in racially discriminatory conduct towards Plaintiff such that she was deprived of her civil rights.

76. Defendant is an employer within the meaning of 42 U.S.C. §1981.

77. Plaintiff is an African-American female, subject to the protections of 42 U.S.C. §1981.

78. Plaintiff was subject to adverse employment treatment including denial of promotional opportunities, despite qualifications, discrimination, and paid less than other similarly situated white and non-Indian men.

79. Plaintiff contends the denial of job opportunities, disparate pay and other disparate treatment was pre-textual and that other similarly situated employees were treated more favorably.

80. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful discrimination by allowing Plaintiff to continue to be subjected to disparate treatment and discrimination in violation of 42 U.S.C. §§1981,1981(a).

81. Plaintiff contends that Defendant has a policy and pattern and practice of treating similarly-situated, Non-African American, employees more favorably than African-American employees.

82. Plaintiff contends that Defendant applies employment policies such as: pay, promotion, evaluation, and treatment in a disparate manner.

83. Defendant failed to acknowledge the discriminatory treatment of Plaintiff.

84. Defendant knew or should have known that Plaintiff was being discriminated against and being treated in a manner disparate and less favorable than other similarly-situated Non-African American employees by the Defendants, agents, employees and/or representatives.

85. Despite said knowledge, Defendant failed to take any remedial action.

86. By and through the conduct described above, Defendant permitted a pattern and practice of unlawful discrimination by permitting Plaintiff to be subjected to continuing disparate treatment on the basis of race in violation of 42 U.S.C. §1981.

87. Plaintiff is informed and believes and based thereon alleges, that in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices which are not yet fully known. At such time as the discriminatory practices become known, Plaintiff will seek leave of the Court to amend the Complaint in this regard.

88. Plaintiff has suffered damages as a result of Defendant's conduct, by and through its agents, employees and/or representatives.

89. As a result of Defendant's conduct, Plaintiff has suffered general and compensatory damages.

90. As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm and is obligated to pay a reasonable fee.

91. Plaintiff requests that she be awarded damages, including general, compensatory, and punitive damages and reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§1981, 1981(a).

WHEREFORE, Plaintiff prays that judgment be entered in her favor against Defendant as follows: That Plaintiff be awarded general and compensatory damages, punitive damages, reinstatement, or front pay, back pay, that Plaintiff be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. §§1981, 1981(a); and that Plaintiff be awarded such other relief as the Court deems just and proper.  Plaintiff further demands trial by jury.

## COUNT IV – RETALIATION
## IN VIOLATION OF 42 U.S.C §§ 1981, 1981(A)

Plaintiff, realleges and references each and every allegation contained in the preceding paragraphs 1 through 48 and incorporates same as set for fully herein.

92. Plaintiff engaged in protected activity of complaining about the discrimination she experienced including as it relates to pay and promotions.

93. After she complained, she suffered many adverse employment actions, including but not limited to: disparate pay, disparate promotional opportunities, receiving a lower evaluation score, the company's continued failure to redress her unequal pay despite knowledge, the removal of her from the company's website.

94. The company has irrefutable knowledge at the highest level of management of its discriminatory practices and has refused to address them.

95. There is a causal link between Plaintiff's protected activity of complaining about racial discrimination and her adverse employment actions.

96. Plaintiff has suffered damages as a result of Defendant's conduct, by and through its agents, employees and/or representatives.

97. Defendant acted with malice and/or with reckless indifference to Plaintiff's federally protected rights.

98. As a result of Defendant's conduct, Plaintiff has suffered general, compensatory, and punitive damages.

99. As a further result of Defendant's conduct, Plaintiff has retained the undersigned law firm and is obligated to pay a reasonable fee.

100. Plaintiff requests that she be awarded damages, including general, compensatory, and punitive damages and reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. §§1981, 1981(a).

WHEREFORE, Plaintiff prays that judgment be entered in her favor against Defendant as follows: That Plaintiff be awarded general, compensatory, and punitive damages, reinstatement, or front pay, back pay, that Plaintiff be awarded reasonable attorney's fees and costs pursuant to

42 U.S.C. §§1981, 1981(a); and that Plaintiff be awarded such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all matters so triable.

Dated this 26th day of February 2021.

SCOTT WAGNER & ASSOCIATES, P.A.
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone:   (561) 653-0008
Facsimile:    (561) 653-0020

s/Cathleen Scott
Cathleen Scott, Esq.
Florida Bar No. 135331
Primary e-mail: CScott@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
Secondary Address:  101 Northpoint Parkway
West Palm Beach, FL 33407
www.ScottWagnerLaw.com