# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

## Case No. 21-80409-CIV-CANNON-BRANNON

JAMIE A. BEALE,

                                  Plaintiff,

v.

WELLTOWER INC.,

                                  Defendant.

## DECLARATION OF SARAH WEST IN SUPPORT OF WELLTOWER'S MOTION TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS

I, Sarah West, hereby declare and state:

1. I am currently employed at Welltower Inc. ("Welltower" or "the Company") as Assistant Vice President of Compensation & Workforce Technology. I have been serving in this role since January 2019. Prior to that, I served in other roles at Welltower including Manager of Compensation and HR Systems from January 2018 to December 2018 and Manager of Human Capital Planning and Analysis from January 2017 to December 2017. I make this declaration in support of Welltower's Motion to Compel Arbitration and Dismiss Proceedings. I am authorized to make these statements on behalf of Welltower. As a result of my positions, I have access to and personal knowledge of the matters and information set forth in this declaration, and if called upon to testify thereto, I can and would competently do so. The documents discussed in this declaration are maintained in the regular course of Welltower's business.

**A. Background About Welltower**

2. Welltower is an S&P 500 health care infrastructure company. It is a Delaware corporation headquartered in Toledo, Ohio. Welltower is a real estate trust that invests with leading seniors housing operators, post-acute care providers and health systems to fund real estate and infrastructure needed to scale innovative care-delivery models and improve people's wellness and overall health-care experience.

3. Welltower is a publicly traded company, with its stock trading on the New York Stock Exchange ("NYSE") under the ticker "WELL."

**B. Welltower's Long-Term Incentive Program**

4. A foundational aspect of Welltower's compensation system is that it pays for performance. In order to provide an incentive for superior work, to motivate the executives and employees of Welltower toward even higher achievement and business results, to tie their goals

and interests to those of Welltower and its stockholders, and to enable Welltower to attract and retain highly qualified executives and employees, Welltower utilizes annual long-term incentive programs ("LTIPs") to grant compensatory stock awards to certain key employees of the Company.

5.  Welltower created the current version of its stock compensation program in February 2016, when Welltower's Board of Directors approved the "2016 Long-Term Incentive Plan." Welltower's stockholders approved the 2016 Long-Term Incentive Plan in May 2016. Welltower executives and employees selected by the Compensation Committee of Welltower's Board of Directors are eligible to participate in the LTIPs and are known as Participants.

6.  Each year, Welltower adopted an LTIP pursuant to the 2016 Plan which ran on a multi-year forward-looking performance schedule. As relevant here:

   a. On February 16, 2021, Welltower adopted the 2021-2023 LTIP. A true and correct copy of the program document is attached hereto as **Exhibit A**;

   b. On February 14, 2020, Welltower adopted the 2020-2022 LTIP. A true and correct copy of the program document is attached hereto as **Exhibit B**;

   c. On February 14, 2019, Welltower adopted the 2019-2021 LTIP. A true and correct copy of the program document is attached hereto as **Exhibit C**;

   d. On February 15, 2018, Welltower adopted the 2018-2020 LTIP. A true and correct copy of the program document is attached hereto as **Exhibit D**;

   e. On November 1, 2017, Welltower adopted the 2017-2019 LTIP (Bridge 2). A true and correct copy of the program document is attached hereto as **Exhibit E**.

   f. On November 1, 2017, Welltower adopted the 2017-2019 LTIP (Bridge 1). A true and correct copy of the program document is attached hereto as **Exhibit F**.

7. The Compensation Committee or its delegee determines whether Participants shall receive awards of stock in Welltower pursuant to a respective LTIP and, if so, the amount of shares of Welltower's common stock to grant to the Participant.

8. Participants receiving awards of stock in that year's LTIP then receive award agreements ("Award Agreements"), which have at times been referred to as "award notices" and are restricted stock unit award agreements between Welltower and the Participant that, together with the LTIP document itself, set forth the terms, conditions, and limitations of the stock awards granted under the particular LTIP. A single restricted stock unit is a contract right that awards the Participant the right to receive a single share of Welltower's common stock, provided that the terms and conditions of the Participant's Award Agreement and LTIP document are satisfied.

9. As relevant here, there are two types of awards that may be granted to Participants under the LTIPs established from 2017 through 2021. First, performance awards are awards of restricted stock units that vest upon the achievement of performance goals at the end of the applicable performance period, subject to the Participant's continued employment at Welltower through such period. Time-based awards are awards in restricted stock units that vest solely based on the Participant's continued service at the Company. Award Agreements set forth the applicable vesting criteria.

10. The respective LTIP document sets forth, *inter alia*, relevant procedures and conditions placed upon Participants' participation in the LTIP. The LTIP documents attached hereto, *see supra* ¶ 6, each contain an arbitration provision that provides in relevant part, "[A]ll claims, disputes, questions, or controversies arising out of or relating to this Program, will be resolved exclusively in final and binding arbitration held under the auspices of Judicial Arbitration & Mediation Services, Inc. ('<u>JAMS</u>') in accordance with JAMS then current Employment

Arbitration Rules." **Exhibits A–F**, § 12(d). They each further provide, "Except as provided by this Program, the Federal Arbitration Act will govern the administration of the arbitration proceedings." *Id.* Moreover, they each state, "The Program and each Award Notice awarded under the Program shall be construed in accordance with and governed [by] the laws of the State of Ohio, without regard to principles of conflict of laws of such state." *Id.* § 12(c).

11. In the relevant years, all Award Agreements stated that they incorporated the terms of the applicable LTIP:

    a. In 2017, all Award Agreements stated, "This Award Notice together with the Plan [further defined as the Company's 2017–2019 Long-Term Incentive Program — Bridge 1 or Bridge 2, *i.e.* the relevant LTIP] (the terms of which are hereby incorporated by reference) are intended to be a final expression of the agreement between you and the Company and are intended to be a complete and exclusive statement of the agreement and understanding between you and the Company with respect to the subject matter contained herein." They all further provided that "[A]ny disputes shall be resolved in accordance with the provisions of the Plan." *Infra* **Exhibits G–I**.

    b. In 2018, 2019, 2020, and 2021, all Award Agreements stated, "The provisions of the [2016] Plan and LTIP are hereby made a part of this Agreement. In the event of any conflict between the provisions of this Agreement and those of the [2016] Plan or the LTIP, the provisions of the [2016] Plan and the LTIP shall control." *Infra* **Exhibits J–U**, § 10(c).

**C. Process for Participants' Agreement to the Terms of Award Agreements**

12. In order to accept the grant of a stock award, the terms of which are set forth in the relevant LTIP document and an Award Agreement, a Participant agrees to the terms of the stock award.

13. A Participant agrees to the terms of the award by following a "click-through" process in Welltower's Fidelity NetBenefits web portal, which facilitates the electronic signing and exchange of agreements related to Welltower's LTIPs and allows Participants to monitor their respective awards and access Award Agreements into which they have entered.

14. First, a Participant must log in to the Participant's Fidelity NetBenefits account using a unique login and password issued only to the Participant. Upon logging into the account, a Participant must click on the link for "WELL Performance Plan." The Participant then clicks on the "Action and Info" button for "Grant Review & Acceptance." The Award Agreement then pops up in a separate window. Participants cannot complete the process of agreeing to the terms of their awards before reviewing the document. Then, after reviewing the Award Agreement, the Participant clicks "Accept Your Grant" to accept the grant and acknowledge agreement to its terms. The Participant then must click on the link for "WELL Restricted Stock" and follow the same steps.

15. After a Participant agrees to the terms of an Award Agreement, Welltower receives an electronic notice from the Fidelity NetBenefits web portal. The Participant also receives a copy of the Award Agreement with a date stamp indicating when the Participant clicked on the "Accept Your Grant" button and a unique confirmation code that is generated for each Award Agreement. Welltower also stores a copy as a business record in the course of its regular business.

16. A Participant will receive the corresponding shares of Welltower's common stock upon the vesting of the award, provided that he or she is in compliance with the Award Agreement's terms and conditions, including that he or she remains employed at Welltower at the time of vesting.

17. A Participant also receives a cash award upon the vesting of the award equal to the accrued dividend value multiplied by the number of shares vested at that time. Again, this is provided that he or she is in compliance with the Award Agreement's terms and conditions, including that he or she remains employed at Welltower at the time of vesting.

### D. Beale Agreed to the Terms of All of Her Awards By Executing the Applicable Award Agreements

18. Plaintiff Jamie A. Beale ("Beale") is currently Vice President – Relationship & Project Management in Welltower's Outpatient Medical division. She was eligible for the forward-looking performance LTIP program participation as a vice president when the forward-looking programs began in November 2017.

19. On November 1, 2017, Beale was given a performance award under the 2017-2019 LTIP (Bridge 1). Beale agreed to the terms of this award on December 3, 2017. Attached as **Exhibit G** is a true and correct copy of the award agreement agreed to by Beale on December 3, 2017, with a confirmation code HXFBLJLS.

20. On November 1, 2017, Beale was given a performance award under the 2017-2019 LTIP (Bridge 2). Beale agreed to the terms of this award on December 3, 2017. Attached as **Exhibit H** is a true and correct copy of the award agreement agreed to by Beale on December 3, 2017, with a confirmation code HXFBLMB4.

21. On November 1, 2017, Beale was given a performance award under the 2017-2019 LTIP (Bridge 2). Beale agreed to the terms of this award on December 3, 2017. Attached as

**Exhibit I** is a true and correct copy of the award agreement agreed to by Beale on December 3, 2017, with a confirmation code HXFBLV2Z.

22. On February 15, 2018, Beale was given a performance award under the 2018-2020 LTIP. Beale agreed to the terms of this award on March 6, 2018. Attached as **Exhibit J** is a true and correct copy of the award agreement agreed to by Beale on March 6, 2018, with a confirmation code I8IA81OI.

23. On February 15, 2018, Beale was given a performance award under the 2018-2020 LTIP. Beale agreed to the terms of this award on March 6, 2018. Attached as **Exhibit K** is a true and correct copy of the award agreement agreed to by Beale on March 6, 2018, with a confirmation code I8IA88BT.

24. On February 15, 2018, Beale was given a time-based award under the 2018-2020 LTIP. Beale agreed to the terms of this award on March 6, 2018. Attached as **Exhibit L** is a true and correct copy of the award agreement agreed to by Beale on March 6, 2018, with a confirmation code I8IA7V35.

25. On February 14, 2019, Beale was given a performance award under the 2019-2021 LTIP. Beale agreed to the terms of this award on February 28, 2019. Attached as **Exhibit M** is a true and correct copy of the award agreement agreed to by Beale on February 28, 2019, with confirmation code J6C5N06N.

26. On February 14, 2019, Beale was given a performance award under the 2019-2021 LTIP. Beale agreed to the terms of this award on February 28, 2019. Attached as **Exhibit N** is a true and correct copy of the award agreement agreed to by Beale on February 28, 2019, with confirmation code J6C5N3JU.

27. On February 14, 2019, Beale was given a time-based award under the 2019-2021 LTIP. Beale agreed to the terms of this award on February 28, 2019. Attached as **Exhibit O** is a true and correct copy of the award agreement agreed to by Beale on February 28, 2019, with confirmation code J6C5MSSQ.

28. On February 14, 2020, Beale was given a performance award under the 2020-2022 LTIP. Beale agreed to the terms of this award on March 3, 2020. Attached as **Exhibit P** is a true and correct copy of the award agreement agreed to by Beale on March 3, 2020, with confirmation code K8F6RSZI.

29. On February 14, 2020, Beale was given a performance award under the 2020-2022 LTIP. Beale agreed to the terms of this award on March 3, 2020. Attached as **Exhibit Q** is a true and correct copy of the award agreement agreed to by Beale on March 3, 2020, with confirmation code K8F6SCGF.

30. On February 14, 2020, Beale was given a time-based award under the 2020-2022 LTIP. Beale agreed to the terms of this award on March 3, 2020. Attached as **Exhibit R** is a true and correct copy of the award agreement agreed to by Beale on March 3, 2020, with confirmation code K8F6RP6Q.

31. On February 16, 2021, Beale was given a performance award under the 2021-2023 LTIP. Beale agreed to the terms of this award on February 24, 2021. Attached as **Exhibit S** is a true and correct copy of the award agreement agreed to by Beale on February 24, 2021, with confirmation code L68A5W0C.

32. On February 16, 2021, Beale was given a performance award under the 2021-2023 LTIP. Beale agreed to the terms of this award on February 24, 2021. Attached as **Exhibit T** is a

true and correct copy of the award agreement agreed to by Beale on February 24, 2021, with confirmation code L68A5XID.

33. On February 16, 2021, Beale was given a time-based award under the 2021-2023 LTIP. Beale agreed to the terms of this award on February 24, 2021. Attached as **Exhibit U** is a true and correct copy of the award agreement agreed to by Beale on February 24, 2021, with confirmation code L68A5QRX.

34. Based on my review of Company records, Beale has never declined to enter into an Award Agreement. Over the last five years, Beale has accepted hundreds of thousands of dollars in time-based awards and performance-based awards. For example, using each award's value on its respective date of issuance, Beale's LTIP awards were valued at over $359,000, which is an estimated 22% of her total compensation for the years 2017 to 2021. In addition to Beale's LTIP awards, her base salary and the annual short-term incentive award (in the form of a cash bonus) are the other significant sources of Beale's compensation. Those are the only three significant forms of compensation that Beale receives.

35. I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on this 17th day of May, 2021, at Toledo, Ohio.

By: *Sarah L. West*
Sarah West