DocuSign Envelope ID: 33687EFE-36A4-416C-8876-1EA5BE3D262A

**CONFIDENTIAL SEPARATION AND SETTLEMENT AGREEMENT AND RELEASE**

This CONFIDENTIAL SEPARATION AND SETTLEMENT AGREEMENT AND RELEASE (this "**Agreement**") is made by and between Jamie A. Beale ("**Employee**") and Welltower Inc., a Delaware corporation (the "**Company**") (collectively the "**Parties**").

WHEREAS, Employee is currently serving as Vice President, Relationship & Project Management;

WHEREAS, the Company and Employee agree that it is in the best interests of both Parties for Employee to resign from her position at the Company;

WHEREAS, on or about February 26, 2021, Employee filed a lawsuit against the Company captioned Beale v. Welltower Inc., Case No. 9:21-cv-80409-AMC in the United States District Court for the Southern District of Florida (the "Lawsuit");

WHEREAS, the Company denies the claims and allegations made by Employee in the Lawsuit;

WHEREAS, Employee and the Company now desire to resolve fully and finally all disputes between Employee and the Company existing up to and including the date on which Employee signs this Agreement, including, without limitation, the claims and defenses in the Lawsuit.

WHEREAS, Employee acknowledges that the Company provided this Agreement to Employee on June 10, 2021; and

WHEREAS, in consideration for Employee's execution and non-revocation of this Agreement, and for Employee's dismissal with prejudice of the Lawsuit, the Company shall provide to Employee the payments and/or benefits described in this Agreement;

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, the receipt, adequacy, and sufficiency of which as consideration is hereby acknowledged, Employee and the Company hereby knowingly, willingly, voluntarily, freely, with the advice of counsel of their choosing and without any coercion agree with each other as follows:

1.      **SEPARATION DATE.**

a.      Employee hereby resigns as Vice President, Relationship & Project Management with the Company effective June 11, 2021.  Employee's last day of employment with the Company is June 11, 2021 (the "**Separation Date**").  Effective as of the Separation Date, Employee hereby resigns from all positions (including without limitation any director and officer positions) that Employee holds (i) with the Company, (ii) with any of the Company's direct and indirect subsidiaries and/or affiliates, and (iii) with any other organization as to any position held at the request or representative of, or for the benefit of the Company.  Employee agrees to take any additional necessary steps and sign any additional documentation that may be reasonably requested by the Company in order to give full effect to such resignations.

b.     As of the Separation Date, Employee shall have no authority or power to represent or bind the Company and any of the entities referenced above or to represent the Company in relation to third parties, and will not represent to third parties that Employee has authority or power to bind the Company and the entities referenced above.

2.     **PAYMENTS UPON SEPARATION**.  The Company shall provide to Employee the following payments and benefits:

a.     Any accrued but unpaid base compensation through the Separation Date on the Company's next regularly scheduled payroll date following the Separation Date (or, if earlier, at such time as required under applicable law).

b.     Except as set forth in this Agreement or as otherwise required by applicable law, Employee's participation in and rights under any Company employee benefit plans and programs (including without limitation any deferred compensation, equity or other incentive plans (if applicable)) will be governed by the terms and conditions of those plans and programs, which plans, programs, terms and conditions may be amended, modified, suspended or terminated by the Company at any time for any or no reason to the extent permitted by law.

3.     **CONDITIONS TO PAYMENTS FOLLOWING SEPARATION**.  Employee acknowledges and agrees that Employee is not entitled to any payments or benefits in connection with Employee's separation other than the payments and benefits set forth in Section 2 of this Agreement.  The payments and/or benefits set forth in Section 4 below (to which Employee would not otherwise be entitled) are being offered in consideration for (a) Employee's execution and delivery of this Agreement within twenty-one (21) days after receiving this Agreement, (b) Employee's releases and promises herein becoming irrevocable upon the passage of seven days after execution of this Agreement without Employee revoking this Agreement as permitted in Section 11 below, and (c) Employee's satisfaction of the promises contained herein, including, without limitation, compliance with the covenants and other obligations set forth in Sections 5(a) and 6 of this Agreement and the restrictive covenants set forth in the Company's Long-Term Incentive Programs (as further defined in Section 4(d) below), together with Employee's applicable Long-Term Incentive Program award agreements and other grant documents governing each such award.  Employee agrees that the payments and/or benefits set forth in Section 4 below and the Company's other releases and promises in this Agreement constitute full and sufficient compensation and consideration for release of all of Employee's claims, including, but not limited to, claims and allegations asserted in the Lawsuit, and for the promises and obligations Employee assumes in this Agreement.

4.     **PAYMENTS FOLLOWING SEPARATION**.

Subject to the terms and conditions of this Agreement, and provided that Employee satisfies the conditions set forth in Section 3 above, Employer agrees to provide Employee with the following payments and/or benefits:

a.     Payment of Employee's attorneys' fees and costs in the amount of $200,000.00, payable to Scott, Wagner & Associates, P.A., to be paid no later than the first business day following the date that is thirty (30) days after the Separation Date;

2

b.      Payment of $337,500.00 to Employee for alleged wage damages and for severance, subject to appropriate deductions and withholdings, to be paid no later than the first business day after the conclusion of the first full payroll cycle following the date upon which this Agreement becomes irrevocable due to the passage of seven days after execution of this Agreement without Employee revoking this Agreement as permitted in Section 11 below;

c.      Payment of $17,500.00 to Employee for alleged non-economic damages, to be paid no later than the first business day after the conclusion of the first full payroll cycle following the date upon which this Agreement becomes irrevocable due to the passage of seven days after execution of this Agreement without Employee revoking this Agreement as permitted in Section 11 below;

d.      Full and accelerated vesting of 1,235 of the restricted stock units awarded to Employee under the Company's 2016 Long-Term Incentive Plan and Long-Term Incentive Programs.  All vesting restrictions on these 1,235 shares shall be lifted no later than the first business day following the date that is thirty (30) days after the Separation Date.  Employee forfeits all other unvested awards under the Company's 2016 Long-Term Incentive Plan and the 2018-2020 Long-Term Incentive Program; 2019-2021 Long-Term Incentive Program; 2020-2022 Long-Term Incentive Program; and 2021-2023 Long-Term Incentive Program (each a "**Long-Term Incentive Program**").  Such unvested and forfeited awards are null and void, and neither Employee nor any of her successors, heirs, assigns, or personal representatives hereafter has any further rights or interests in such unvested and forfeited awards or any portion thereof.  Any of Employee's otherwise vested awards under the Company's 2016 Long-Term Incentive Plan and the Long-Term Incentive Programs shall be governed by the terms of the applicable Long-Term Incentive Program, together with Employee's applicable award agreements and other grant documents governing each such award.

e.      Reimbursement for the full cost of the applicable premium payments for Employee's and Employee's eligible dependents' continued coverage under the group health plan maintained by the Company in which Employee participated pursuant to the Employee Retirement Income Security Act of 1974, as amended ("COBRA"), until the earlier of the twelve-month anniversary of the end of the calendar month in which the Separation Date occurred and the date Employee becomes eligible for group health plan coverage through a new employer (such period the "COBRA Subsidy Period"); provided, however, that the foregoing benefit (i) is contingent on Employee's timely election of continuation coverage as provided under COBRA; and (ii) is contingent on Employee's timely payment of the entire amount of the applicable COBRA premiums.  Such amounts will be reimbursed by the Company within thirty days after its receipt of sufficient documentation of payment by Employee of the applicable monthly COBRA premiums (which documentation Employee shall submit to the Company within fifteen days after such payment by Employee).  Employee shall promptly inform the Company in writing when Employee obtains or becomes eligible for any such other health care coverage.  Employee shall be responsible for the full unsubsidized costs of such COBRA coverage after the end of the COBRA Subsidy Period.

f.      Employee acknowledges and represents that, other than as expressly set forth in Sections 2 and 4 of this Agreement, the Company has paid or provided all salary, wages, bonuses, accrued vacation, PTO, premiums, leaves, housing allowances, relocation costs, interest, severance, outplacement costs, fees, reimbursable expenses, commissions, stock, stock

3

options, vesting, and any and all other benefits and compensation due to Employee. Employee further acknowledges that: Employee has fully reimbursed the Company for any and all personal charges made on the Company's credit card or otherwise; to the extent such amounts have not been reimbursed to the Company, the Company may withhold such amounts from future payments, or at the Company's discretion, collect such charges from Employee to the maximum extent not prohibited by law; and Employee shall be obligated to pay such amounts on demand. If Employee violates any of Employee's obligations, covenants or representations described in this Agreement, including, but not limited to, Sections 5(a) and 6 of this Agreement, or if Employee revokes this Agreement in accordance with Section 11 of this Agreement such that the releases set forth in Section 5 of this Agreement do not become effective, then (i) the Company's obligations to provide the payments or other benefits under Section 4 of this Agreement shall immediately cease, (ii) Employee shall be obligated to return to the Company any compensation and benefits paid or otherwise provided to Employee pursuant to Section 4 of this Agreement, and (iii) the Company will be entitled to obtain any and all other remedies provided by law or in equity.

5.          **DISMISSAL OF THE LAWSUIT AND RELEASE OF CLAIMS**.

a.          Employee agrees that on or before the Separation Date she will voluntarily move for or stipulate to dismissal of the Lawsuit, and all claims and allegations asserted therein, with prejudice through a motion or stipulation approved or joined by the Company prior to filing. Employee further agrees to request and cooperate in good faith that any review of this Agreement by the Court be conducted *in camera* and that to the extent this Agreement or any of its terms are filed on the Court's docket, it be done under seal. Any filings, briefs, or motions regarding *in camera* review of under seal filings will be either approved or joined by the Company prior to filing. Employee and the Company agree that dismissal of the Lawsuit with prejudice shall constitute a final judgment on the merits to which the principles of *res judicata* shall apply to the fullest extent of the law. For the avoidance of doubt, any breach of this Section 5(a) shall constitute a material breach of this Agreement.

b.          Employee (and anyone claiming through Employee or on Employee's behalf) unconditionally, knowingly and voluntarily releases, remises, and forever discharges the Company and any of its past or present subsidiaries, divisions, joint ventures, affiliates, related entities, predecessors, merged entities and parent entities, benefit plans, and all of their respective past and present officers, directors, stockholders, employees, partners, members, managers, owners, consultants and advisors, benefit plan administrators and trustees, agents, attorneys, insurers, reinsurers, representatives, affiliates and all of their respective successors and assigns (collectively, the "**Company Released Parties**"), from any and all claims, actions, causes of action, demands, obligations, grievances, suits, losses, debts and expenses (including attorneys' fees and costs), damages and claims in law or in equity of any nature whatsoever, known or unknown, suspected or unsuspected, Employee ever had, now has, or may ever have against any Company Released Party up to and including the day on which Employee signs this Agreement. Without limiting the generality of the foregoing, the claims Employee is waiving include, but are not limited to, (i) all claims arising out of or related in any way to the terms or conditions of Employee's employment with or by the Company, compensation from the Company, or the termination or separation of Employee's employment with the Company or any association or transaction with or by the Company, including without limitation, all claims under any Company incentive plans further including, without limitation, the Long-Term Incentive

Programs (as further defined in Section 4(d) above); (ii) all claims of discrimination or harassment on the basis of age, sex, race, national origin, religion, sexual orientation, disability, veteran status or any other legally protected category; (iii) all claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Lilly Ledbetter Fair Pay Act of 2009, the Fair Labor Standards Act, the Equal Pay Act, the Genetic Information Nondiscrimination Act, 42 U.S.C. § 1981, the National Labor Relations Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, the Immigration Reform and Control Act, the Fair Credit Reporting Act, and all other federal, state and local employment, benefit, fair employment and anti-discrimination laws, all as amended, including without limitation the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq., the Ohio Civil Rights Act, O.R.C. § 4112.01 et seq., the Ohio Age Discrimination in Employment Act, O.R.C. § 4112.14, the Ohio Uniformed Services Employment and Reemployment Act, O.R.C. §§ 5903.01, 5903.02, the Florida Uniformed Servicemembers Protection Act, Fla. Stat. § 250.80, et seq., the Florida Uniformed Services Employment and Reemployment Act, Fla. Stat. § 115.01, et seq., the Ohio Minimum Fair Wages Act, O.R.C. § 4111.01 et seq., the Florida Minimum Wage Act, Fla. Stat. § 448.110 et seq., and the Ohio Wage Payment Act, O.R.C. § 4113.15; (iv) all claims under the False Claims Act, the Securities Exchange Act of 1934, the Commodity Exchange Act, the Consumer Financial Protection Act, the American Recovery and Reinvestment Act, the Foreign Corrupt Practices Act, and the EU Competition Law, all as amended; (v) all claims of whistleblowing and retaliation under federal, state and local laws, including without limitation the Ohio Whistleblower Protection Act, O.R.C. § 4113.51 et seq., and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102; (vi) all claims under any principle of common law or sounding in tort or contract (including without limitation all claims for breach of contract (oral, written or implied), wrongful termination, defamation, invasion of privacy, infliction of emotional distress, tortious interference, fraud, estoppel, unjust enrichment, and any other contract, tort or other common law claim of any kind); (vii) all claims for attorneys' fees, costs, damages or other relief (monetary, equitable or otherwise), whether under foreign, federal, state or local law, whether statutory, regulatory or common law, to the fullest extent permitted by law; and (viii) all claims under any policy, agreement, contract, understanding or promise, written or oral, formal or informal, between any of the Company Released Parties and Employee.  Further, each of the Company Released Parties (other than the Company) is intended to and shall be a third-party beneficiary of this Agreement.

c.      Notwithstanding the foregoing, the release of claims in Section 5(b) does not affect or waive: (i) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (ii) any claims Employee may have for Employee's own vested accrued employee benefits under the terms of the Company's health, welfare, or retirement benefit plans as of Employee's last day of employment with the Company; (iii) any right to pursue claims which by law cannot be waived by signing this Agreement; (iv) Employee's rights to indemnification (if any) under any written indemnification agreement Employee has with the Company or any other Company Released Party and/or under the Company's or any Company Released Party's charter or bylaws, or to whatever coverage Employee may have under the Company's or any Company Released Party's directors' and officers' insurance policy for acts and omissions when Employee was an officer or director of the Company or of any Company Released Party; or (v) Employee's right to enforce this Agreement.

DocuSign Envelope ID: 33687EFE-36A4-416C-8876-1EA5BF3D262A

d.      If any claim is not subject to release set forth in Section 5(b), to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company or any other Company Released Party is a party.

e.      Other than the Lawsuit and the exhaustion of administrative remedies prior to filing claims therein, Employee affirms that Employee has not filed, has not caused to be filed, or presently is not a party to any claim against any Company Released Party (subject to Section 6(g) below). Employee also represents and warrants that there has been no assignment or other transfer of any interest in any claim by Employee that is asserted in the Lawsuit or that is covered by the release set forth in Section 5(b). Aside from those asserted by Employee in the Lawsuit, Employee further affirms that Employee is not aware of any allegations of wrongdoing by the Company or its officers or directors, including any allegations of corporate fraud.

f.      Employee intends that this release of claims in Section 5(b) cover all claims described therein, whether or not known to Employee. Employee further recognizes the risk that, subsequent to the execution of this Agreement, Employee may incur loss, damage or injury which Employee attributes to the claims encompassed by the release in Section 5(b). Employee also expressly waives and relinquishes, to the fullest extent permitted by law, any and all rights she may have under California Civil Code Section 1542, or the comparable provisions of the laws of any other jurisdiction, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

g.      The Company hereby mutually releases, remises, and forever discharges Employee from all actions, cause of action, liabilities, disputes, judgments, obligations, damages and claims in any manner relating to Employee's employment with or separation from the Company. The Company reserves its right to enforce this Agreement and the restrictive covenants set forth in set forth in the Company's Long-Term Incentive Programs (as further defined in Section 4(d) above), together with Employee's applicable Long-Term Incentive Plan award agreements and other grant documents governing each such award.

6.      **CONFIDENTIALITY, RESTRICTIVE COVENANTS, NON-DISPARAGEMENT, RETURN OF PROPERTY**.

a.      <u>Confidentiality of Agreement</u>. Employee agrees to forever maintain the terms of this Agreement in confidence and not to disclose them except as necessary to effectuate the terms or to seek Court approval (and to seek confidential treatment for any such terms to the extent the Court requires their disclosure). Subject to the foregoing, Employee shall make no disclosure or reference to the terms of this Agreement to any person or entity, except to Employee's attorneys, employee's spouse, and, as necessary, tax preparers, provided that each such person agrees to be bound by the confidential nature of this Agreement. Employee and Employee's counsel may also make such disclosure pursuant to court or administrative order,

DocuSign Envelope ID: 33687FEE-36A4-416C-8876-1EA5BE3D262A

subpoena, or as otherwise may be required by law, and to government authorities. Employee acknowledges and agrees that Employee's promise to maintain the confidentiality of this Agreement is an important element of the consideration for and inducement of the Company to enter this Agreement. Employee further agrees that Employee's breach of this Section 6(a) constitutes irreparable harm to the Company. Nothing in this Agreement shall preclude Employee from stating, in response to any inquiry, that the Lawsuit has been resolved by mutual agreement and to the mutual satisfaction of the Parties, but it is agreed that Employee shall make no further comment.

      b.   <u>Protection of Confidential Information.</u> Employee also agrees that Employee shall not, directly or indirectly, use, disclose or make available to any person, firm, corporation, association or other entity for any reason or purpose whatsoever, any Confidential Information (as defined below), and Employee affirms that Employee has not improperly used, disclosed or otherwise made available any Confidential Information of the Company. Employee further agrees that, on or before the Separation Date, all Confidential Information in Employee's possession that is in written or other tangible form will be returned to the Company and will not be retained by Employee or furnished to any third party, in any form except as provided herein. Notwithstanding the foregoing, this Section 6(b) shall not apply to Confidential Information that (i) was publicly known at the time of disclosure to Employee, (ii) becomes publicly known or available thereafter other than by any means in violation of this Agreement or any other duty owed to the Company by Employee, (iii) is lawfully disclosed to Employee by a third party, or (iv) is required to be disclosed by law or by any court, arbitrator or administrative or legislative body with actual or apparent jurisdiction to order Employee to disclose or make accessible any information or is voluntarily disclosed by Employee to law enforcement or other governmental authorities as set forth in Section 6(g) of this Agreement. As used in this Agreement, "**Confidential Information**" means, without limitation, any non-public confidential or proprietary information disclosed to Employee or known by Employee as a consequence of or through Employee's relationship with the Company, in any form, including electronic media. Confidential Information also includes, but is not limited to, the Company's business plans and financial information, marketing plans, personnel matters, and business opportunities. Nothing herein shall limit in any way any obligation Employee may have relating to Confidential Information under any other agreement or promise to the Company.

      Notwithstanding any other provision of this Agreement, Employee shall not be held liable under federal or state trade secrets law or under this or any other agreement for disclosing trade secrets or other Confidential Information in confidence to an attorney or government official for the purpose of reporting or investigating suspected violations of law, or in a court filing under seal.

      c.   <u>Restrictive Covenants.</u> Employee agrees to comply fully with any and all non-competition, non-solicitation, confidentiality, non-disparagement, intellectual property and other restrictive covenants to which Employee has previously agreed, including in any Long-Term Incentive Program.

      d.   <u>Non-Disparagement.</u> Employee will not make or authorize anyone else to make on Employee's behalf any disparaging or untruthful remarks or statements, whether oral or written, about the Company, its operations or its products, services, affiliates, partners, operators, managers, officers, directors, employees, or agents, or issue any communication that reflects

DocuSign Envelope ID: 336875EE-36A4-416C-8876-1EA5BF3D263A

adversely on or encourages any adverse action against the Company or against any of the above. Employee will not make any direct or indirect written or oral statements to the press, television, radio or other media or other external persons or entities concerning any matters pertaining to the business and affairs of the Company, its affiliates or any of its officers or directors. However, nothing herein prevents Employee from providing truthful information to government authorities or otherwise as protected or required by law. The Company will instruct its Chief Executive Officer, Executive Vice President & Chief Financial Officer, Senior Vice President & Head of Human Capital, and Senior Vice President – Medical Office not to make or authorize anyone else to make on their behalf any disparaging or untruthful remarks or statements, whether oral or written, about Employee. However, nothing herein prevents the Company or these individuals from providing truthful information to government authorities or otherwise as protected or required by law.

       e.      <u>Return of Company Materials</u>.

      (i)      *Definition of Electronic Media Equipment and Electronic Media Systems*. For purposes of this Agreement, "**Electronic Media Equipment**" includes, but is not limited to, computers, external storage devices, thumb drives, handheld electronic devices, telephone equipment, and other electronic media devices. Additionally, "**Electronic Media Systems**" includes, but is not limited to, computer servers, messaging and email systems or accounts, and web-based services (including cloud-based information storage accounts), whether provided for Employee's use directly by the Company or by third-party providers on behalf of the Company.

      (ii)      *Return of Company Property*. Employee understands and agrees that anything that Employee created or worked on for the Company while working for the Company belongs solely to the Company and that Employee cannot remove, retain, or use such information without the Company's express written permission. Accordingly, Employee confirms (subject to Section 6(g) of this Agreement), that, on or before the Separation Date (or, if that is not feasible, within five days after the Separation Date), Employee will deliver to the Company, and will not keep in Employee's possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Confidential Information, all Company equipment including all Company Electronic Media Equipment, all tangible embodiments of Confidential Information, all electronically stored information and passwords to access such property, Company credit cards, records, data, notes, notebooks, lists, books, client contact information, reports, files, proposals, lists, correspondence, specifications, software, any other documents and property, and reproductions of any of the foregoing items, including, without limitation, those records maintained on a cloud storage network.

      (iii)      *Return of Company Information on Company Electronic Media Equipment*. Employee agrees that Employee has not and will not copy, delete, or alter any information contained in Employee's Company Electronic Media Equipment prior to returning any information to the Company. Notwithstanding the foregoing, Employee is permitted to copy, delete or alter information that is solely personal in nature and not integrated with or incorporated with Company information.

      (iv)      *Return of Company Information on Personal Electronic Media Equipment*. In addition, if Employee has used any personal Electronic Media Equipment or

personal Electronic Media Systems to create, receive, store, review, prepare or transmit any Company information, including but not limited to, Confidential Information, Employee agrees, on or before the Separation Date (or, if that is not feasible, within five days after the Separation Date), to use Employee's best efforts to make a prompt search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information, and to conduct such search.  If Employee locates such information, Employee agrees to notify the Company of that fact and then provide the Company with a computer-useable copy of all such Company information from those equipment and systems or a reasonable opportunity to create such a copy; and Employee further agrees to use Employee's best efforts to cooperate with the Company to verify that the necessary copying is completed (including upon request providing a sworn declaration confirming the return of property and deletion of information), and, upon confirmation of compliance by the Company, Employee agrees to delete and expunge all Company information.

(v)     *Breach of Section 6(e)*.  To the extent the Company reasonably believes there is a breach of Section 6(e) of this Agreement and to the extent such breach of Section 6(e) is reasonably susceptible to cure, the Company will give Employee written notice of such breach and a period of 30 days to substantially cure the same.  Additionally, to the extent Employee determines that Employee is in breach of Section 6(e), Employee shall notify the Company and substantially cure such breach within five days of determining such breach.  If Employee substantially cures the breach discussed in this Section 6(e)(v) within such cure period, Employee will be deemed to be in compliance with Section 6(e).

f.      For the avoidance of doubt, any breach of Section 6 of this Agreement, inclusive, shall constitute a material breach of this Agreement.  Notwithstanding Section 7 of this Agreement, the Parties agree that it would be difficult to fully compensate the Company for damages resulting from the breach or threatened breach of the covenants set forth in Section 6 of this Agreement and accordingly agree that the Company shall be entitled to temporary and injunctive relief, including temporary restraining orders, preliminary injunctions and permanent injunctions, or to obtain specific performance, without the need to post any bond, to enforce such provisions in any action or proceeding instituted in the United States District Court for the Northern District of Ohio or in any court in the State of Ohio having subject matter jurisdiction.  This provision with respect to injunctive relief shall not, however, diminish the Company's right to claim and recover damages.

g.      Employee understands that nothing contained in this Agreement limits Employee's ability to file a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission or any other federal, state or local governmental agency or commission (each a "**Government Agency**").  Employee further understands that this Agreement does not limit Employee's ability to communicate with any Government Agency or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency, including providing documents or other information, without notice to the Company.  However, to the maximum extent permitted by law, Employee agrees that if such a charge or complaint is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.  This Agreement does not limit or prohibit Employee's right to receive an award for information provided to any Government Agency.  Nothing in this Agreement prohibits or creates liability for conduct as and to the extent

DocuSign Envelope ID: 33687F5E-36A4-416C-8876-1EA5BF3D263A

permitted in the Company's policy with respect to the reporting of suspected violations of law or unethical conduct.

7.     **ARBITRATION**.  Except (i) as provided in Sections 6(f) and 6(g) hereof, (ii) as provided in any Long-Term Incentive Program (as further defined in Section 4(d) above), together with Employee's Long-Term Incentive Program award agreements or other grant documents governing each such award, and (iii) claims or disputes that are not arbitrable pursuant to applicable law, all claims, disputes, questions, or controversies arising out of or relating to this Agreement, including without limitation the construction or application of any of the terms, provisions, or conditions of this Agreement, will be resolved exclusively in final and binding arbitration held under the auspices of the Judicial Arbitration & Mediation Services, Inc. ("**JAMS**") and shall be conducted in accordance with JAMS' then-current Employment Arbitration Rules and Procedures, or successor rules then in effect (except as otherwise provided in this Agreement).  The arbitration will be held in Toledo, OH and will be conducted and administered by JAMS or, in the event JAMS does not then conduct arbitration proceedings, a similarly reputable arbitration administrator.  Employee and the Company will select a mutually acceptable, neutral arbitrator from among the JAMS panel of arbitrators.  Except as provided by this Agreement, the Federal Arbitration Act will govern the administration of the arbitration proceedings.  The arbitrator will apply the substantive law (and the law of remedies, if applicable) of the State of Ohio, or federal law, if Ohio law is preempted, and the arbitrator is without authority to apply any different substantive law.  Employee and the Company will each be allowed to engage in adequate discovery, the scope of which will be determined by the arbitrator consistent with the nature of the claim(s) in dispute.  The arbitrator will have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and will apply the standards governing such motions under the Federal Rules of Civil Procedure. The arbitrator will render a written award and supporting opinion that will set forth the arbitrator's findings of fact and conclusions of law.  Judgment upon the award may be entered in any court of competent jurisdiction.  The Company will pay the arbitrator's fees, as well as all administrative fees, associated with the arbitration.  Each party will be responsible for paying its own attorneys' fees and costs (including expert witness fees and costs, if any), provided, however, that the arbitrator may award attorneys' fees and costs to the prevailing party, except as prohibited by law.  If the Company is the prevailing party, the arbitrator may award some or all of the costs for the arbitrator's fees and /or other administrative fees to the fullest extent not prohibited by law.  The existence and subject matter of all arbitration proceedings, including any settlements or awards thereunder, shall remain confidential.  In entering into this Agreement, both Parties are waiving the right to a trial by judge or jury with respect to claims subject to arbitration under this Agreement.

8.     **SECTION 409A**.

a.     This Agreement is intended to be exempt from or comply with Section 409A of the Internal Revenue Code of 1986, as amended (the "Code Section 409A") and will be administered and interpreted so as not to subject Employee to the payment of any interest and tax penalty which may be imposed under Code Section 409A, and this Agreement shall be interpreted and construed accordingly; provided, however, that the Company and the other Company Released Parties shall not be responsible for any taxes, penalties, interest or other losses or expenses incurred by Employee due to any failure to comply with Code Section 409A. The timing of the payments or benefits provided herein may be modified to comply with Code

DocuSign Envelope ID: 33687F5F-36A1-416C-8876-1EA5BF3D263A

Section 409A.  A termination of employment shall not be deemed to have occurred for purposes of any provision of this Agreement providing for the payment of amounts or benefits that may be considered "deferred compensation" under Code Section 409A (after taking into account all exclusions applicable to such payments or benefits under Code Section 409A) upon or following a termination of employment unless such termination is also a "Separation from Service" within the meaning of Code Section 409A and, for purposes of any such provision of this Agreement, references to a "resignation," "termination," "termination of employment" or like terms shall mean Separation from Service.  Whenever this Agreement specifies a payment period with reference to a number of days, the actual date of payment within the specified period shall be within the sole discretion of the Company; provided that if the timing of the payment is contingent on the lapse or expiration of the revocation period for this Agreement and such revocation period could, as of the Separation Date, lapse either in the same year as the Separation Date or in the following year, the actual date of payment within the specified period shall be in such following year.

        b.      If Employee is a "specified employee" as defined in Code Section 409A, any payment scheduled to be made under this Agreement that may be considered "deferred compensation" under Code Section 409A (after taking into account all exclusions applicable to such payments or benefits under Code Section 409A), that is otherwise due on or within the six-month period following the Separation Date will accrue during such six-month period and will instead become payable in a lump sum payment on the first business day period following such six-month period (or, if earlier, following the date of Employee's death).  Furthermore, if any other payments of money or other benefits due to Employee under this Agreement could cause the application of an accelerated or additional tax under Code Section 409A, such payments or other benefits shall be deferred if deferral will make such payment or other benefits compliant under Code Section 409A, or otherwise such payment or other benefits shall be restructured, to the extent practicable, in a manner, determined by the Company, that does not cause such an accelerated or additional tax.  To the extent any reimbursements or in-kind benefits due to Employee under this Agreement constitute "deferred compensation" under Code Section 409A (after taking into account all exclusions applicable to such payments or benefits under Section 409A), any such reimbursements or in-kind benefits shall be paid to Employee in a manner consistent with Treas. Reg. Section 1.409A-3(i)(1)(iv).

        c.      Notwithstanding any contrary provision herein, Employee's right to any payment (including each installment payment) under this Agreement shall be treated as a "separate payment" within the meaning of Code Section 409A.  Any amount of expenses eligible for reimbursement or in-kind benefit provided during a calendar year shall not affect the amount of expenses eligible for reimbursement or in-kind benefit to be provided during any other calendar year.  The right to reimbursement or to an in-kind benefit pursuant to this Agreement shall not be subject to liquidation or exchange for any other benefit.

        **9.**      **COOPERATION**.  To the extent reasonably requested by the Company (and subject to Section 6(g) of this Agreement), Employee shall cooperate with the Company both (a) with respect to (i) any formal or informal inquiry, investigation, litigation or other proceeding involving the Company and a governmental agency related to Employee's service to the Company and (ii) any litigation, arbitration, mediation and other proceeding between the Company and a third party related to Employee's service to the Company and (b) in connection with other matters arising out of Employee's service to the Company generally.  The Company

shall endeavor to collaborate with Employee to minimize disruption of Employee's other activities.

10.     **NO ADMISSION OF LIABILITY**.  Employee and the Company agree that neither this Agreement nor the furnishing of the consideration as set forth in this Agreement shall be deemed or construed at any time for any purpose as an admission by any Company Released Party of wrongdoing or evidence of any liability or unlawful conduct of any kind, including but not limited to the allegations in the Lawsuit.  Each of the Company Released Parties expressly denies any such wrongful or unlawful conduct.

11.     **REVIEW PERIOD, DISCLOSURES, REVOCATION RIGHT AND OTHER ACKNOWLEDGEMENTS**.

a.      Employee acknowledges and agrees that: (i) Employee has up to twenty-one (21) days during which to review and consider the provisions of this Agreement, although Employee may at Employee's discretion, knowingly and voluntarily, sign and return the Agreement at any earlier time; (ii) modification of this Agreement (including any exhibit hereto), whether material or immaterial, does not restart this twenty-one day consideration period; (iii) Employee is waiving rights or claims which may be waived by law in exchange for consideration that is not otherwise due to Employee, including claims and rights under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), and as otherwise described in this Agreement; (iv) rights or claims that may arise after the date this Agreement is executed by Employee are not waived by this Agreement; (v) at any time within seven days after signing this Agreement, Employee may revoke this Agreement; and (vi) this Agreement is not enforceable until the revocation period has passed without a revocation.

b.      The Company hereby advises Employee (and Employee acknowledges that Employee is hereby advised) to consult with an attorney of Employee's choosing (at Employee's expense) prior to signing this Agreement, and Employee acknowledges that Employee has done so.  Employee acknowledges and agrees that the payments and benefits provided by the Company under the terms of this Agreement are sufficient consideration to require Employee to comply with Employee's obligations under this Agreement.  Employee represents that Employee has read this Agreement and understands its terms and that she enters into this Agreement freely, voluntarily, and without coercion.

c.      To revoke this Agreement, Employee must send a written statement of revocation to Welltower Inc., Attn:  SVP, Head of Human Capital, 4500 Dorr Street, Toledo, OH 43615 or to pbyrne@welltower.com.  This revocation must be received no later than the seventh day following Employee's execution of this Agreement.  If no such revocation occurs, this Agreement shall become effective on the eighth day following execution of this Agreement.  In the event that Employee revokes this Agreement, it shall have no force or effect, and Employee shall have no right to receive or retain any payments and benefits provided by the Company under Section 4 of this Agreement.

12.     **INTEGRATED AGREEMENT**.  This Agreement (including any exhibits or schedules hereto) is intended by the Parties to be a complete and final expression of their rights and duties respecting the subject matter of this Agreement and supersedes all prior agreements, promises, covenants, arrangements, communications, representations or warranties, whether oral or written, by any officer, employee or representative of any party hereto, and any prior

agreement of the Parties hereto in respect of the subject matter contained herein, except as expressly set forth herein (including but not limited to treatment of certain equity awards pursuant to the applicable plans, awards and other operative documents). Except as expressly provided herein, nothing in this Agreement limits or releases Employee from any other obligation regarding confidentiality, intellectual or other Company property, or post-employment competitive activities that Employee has or may have to the Company or any of its affiliates (including, without limitation, under any Company Long-Term Incentive Plan in which Employee participated, the Company's Code of Business Conduct and Ethics, or applicable law). All descriptive headings in this Agreement are inserted for convenience only and shall be disregarded in construing or applying any provision of this Agreement. This Agreement has been negotiated and prepared by both Parties and their counsel. If any of the provisions of this Agreement requires a court or arbitrator's interpretation, no ambiguity shall be construed against the drafter.

13. **TAXES AND OTHER WITHHOLDINGS**. Notwithstanding any other provision of this Agreement, the Company may withhold from amounts payable hereunder all federal, state, local and foreign taxes and other amounts that are required to be withheld by applicable laws or regulations, and the withholding of any amount shall be treated as payment thereof for purposes of determining whether Employee has been paid amounts to which Employee is entitled. Employee acknowledges that (a) the Company has made no representation to Employee as to the tax treatment of any compensation or benefits to be paid to Employee under this Agreement and (b) the Company has no obligation to "gross-up" any amount payable to Employee under this Agreement for taxes payable by Employee thereon. Employee agrees that she will not assert a claim against the Company for the payment or reimbursement of any tax consequences resulting from any payment made pursuant to this Agreement.

14. **SURVIVAL.** Except as mutually agreed in writing in accordance with Section 16 below, the covenants, agreements, representations and warranties contained in or made in Sections 5 through 21 of this Agreement shall survive any termination of this Agreement.

15. **WAIVER.** Neither party shall, by mere lapse of time, without giving notice or taking other action hereunder, be deemed to have waived any breach by the other party of any of the provisions of this Agreement. Further, the waiver by either party of a particular breach of this Agreement by the other shall neither be construed as, nor constitute, a continuing waiver of such breach or of other breaches of the same or any other provision of this Agreement. Neither party waives any obligation of the other party to provide notice as provided by this Agreement.

16. **MODIFICATION**. This Agreement may not be modified or terminated unless such modification or termination is embodied in writing, signed by the party against whom the modification is to be enforced.

17. **NOTICE**. Except as otherwise expressly provided in this Agreement, any notice to either party hereunder shall be in writing and sent by overnight courier, certified mail, or registered mail (return receipt requested), postage prepaid, addressed as follows (or to such other address as such party may designate in writing from time to time):

DocuSign Envelope ID: 33687F5F-36A4-416C-8876-1EA5BF3D263A

If to the Company:

Welltower Inc.
4500 Dorr Street
Toledo, OH 43615
Attention: Senior Vice President – Head of Human Capital

With a copy (which shall not constitute notice to the Company) to:

Matthew McQueen, Executive Vice President – General Counsel & Corporate Secretary
Welltower Inc.
4500 Dorr Street
Toledo, Ohio 43615

If to Employee, at the address on file with the Company's Human Capital Department.

The actual date of mailing, as shown by a mailing receipt therefor, shall determine the time at which notice was given. Neither Party may use any method of overnight courier, certified mail, or registered mail (return receipt requested), postage prepaid, that does not allow the sender to be informed of the date of delivery of such notice.

18.    **ASSIGNMENT AND SUCCESSORS**.  The Company shall have the right to assign its rights and obligations under this Agreement to any affiliate of the Company or to an entity that, directly or indirectly, acquires all or substantially all of the assets or the business of the Company. The rights and obligations of the Company under this Agreement shall inure to the benefit and shall be binding upon the successors and assigns of the Company. Employee shall not have any right to assign Employee's obligations under this Agreement and shall only be entitled to assign Employee's rights under this Agreement upon Employee's death (in which case any payments or benefits provided hereunder will be provided to Employee's designated beneficiary or, if no such beneficiary has been designated, to Employee's estate), solely to the extent permitted by this Agreement, or as otherwise agreed to by the Company.

19.    **SEVERABILITY**.  Each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. Moreover, if any provision contained in this Agreement is determined by an arbitrator or court of competent jurisdiction to be unenforceable because it is excessively broad in scope, whether as to duration, activity, geographic application, subject or otherwise, it shall be construed, by limiting or reducing it to the extent legally permitted, so as to be enforceable to the extent compatible with then applicable law in order to achieve the intent of the Parties.

20.    **GOVERNING LAW**.  This Agreement will be construed, interpreted, governed and enforced in accordance with the laws of the State of Ohio, without regard to its conflict of laws principles.

21.    **COUNTERPARTS**.  This Agreement may be executed in counterparts and delivered by means of facsimile or portable document format (PDF), each of which when so

DocuSign Envelope ID: 33687F5E-36A4-416C-8876-1EA5BF3D263A

executed and delivered shall be an original, but all such counterparts together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, THE PARTIES STATE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING AND KNOWINGLY AND VOLUNTARILY INTEND TO BE BOUND THERETO.

WELLTOWER INC.

Sign: Pam Byrne
24F61D12D7AA475...

Print: Pam Byrne

Title: SVP - Head of Human Capital

Date: 6/11/2021

JAMIE A. BEALE

Sign: Jamie A. Beale
271ED0058E1144B...

Print: Jamie A. Beale

Date: 6/11/2021